## COMMONWEALTH *versus* The Inhabitants of CAMBRIDGE.

The provision in *St.* 1823, *c.* 21, (Revised Stat. *c.* 46, § 30,) that no male person over the age of twelve years and under the age of sixty years, while of competent health to labor, shall be entitled to support as a State pauper, was designed to prohibit the support of persons at the public expense, who were of competent health and capacity to support themselves; it was not intended to apply to such as, though able to perform some labor, yet were not able to perform enough for their entire support.

Under *St.* 1830, *c.* 120, (Revised Stat. *c.* 46, § 31, 32,) if the earnings collectively of all the State paupers supported by a town, during any year, together with the stated allowance made by the Commonwealth for each of them, did not exceed the expenses collectively of supporting them all during the year, the town was entitled to the whole of such earnings and allowances.

ASSUMPSIT for money had and received, to recover back the several sums of money paid by the Commonwealth to the defendants, for the support of paupers, from January 26, 1828, to April 14, 1836, the date of the writ.

The defendants pleaded the general issue, and the statute of limitations.

At the trial, before *Wilde* J., the defendants admitted that they had received the moneys charged in their several accounts rendered to the legislature ; that those accounts were accompanied by the certificates of their overseers of the poor, in the form required by the statutes in relation to this subject; that many of the paupers, for whose support the State was charged in those accounts the sums limited in the statutes, did, during the same period, perform labor for the town, and for private citizens for the benefit of the town, to a large amount, which the defendants insisted was not sufficient, including the sum allowed by the State, to compensate the town for the expense of their support ; and the defendants admitted that no credit had ever been given by the town to the State, for the labor of these paupers.

Upon this admission the defendants, being called on for their defence, offered to prove that it was made known to the several committees of the legislature on accounts, in each of the years included in the plaintiff's claim in this action, that t was the practice in all the towns having State paupers, as

well as others, to set them to work from time to time, as they were able and occasion offered ; that Cambridge did so, as well as other towns ; that no credit was given to the State by such towns for the labor of such paupers, it being well understood that the cost of supporting them was much greater than the sum allowed by the State ; and that, with the knowledge of these facts, the committees allowed the several pauper accounts, including those of Cambridge, conceiving such to be the intent of the statutes.

This evidence was objected to by the attorney general, as incompetent, and was ruled, *pro forma*, to be inadmissible.

A verdict was taken by consent, for the plaintiffs, subject to the opinion of the Court upon the questions of law arising in the case.

It was agreed that any public documents might be referred to by either party, in the argument before the whole Court on the questions of law.

*April 7th.*    *Greenleaf* and *Buttrick*, for the defendants, referred to *St.* 1823, c. 21, § 1, which provides that " no male person over the age of twelve years and under the age of sixty years, while of competent health to labor, shall be considered a State pauper and entitled to support as such ;" and they contended that by a *pauper*, in the several statutes on the subject, is intended one who is not able wholly to support himself, and that the expression, " of competent health to labor," means of health and strength sufficient to acquire an entire support ; that the legislature could not have supposed that a man incapable of doing any work could be supported for seventy cents a week, but it was considered, that taking State paupers, one with another, their labor and 70 cents a week would be sufficient for that purpose ; that it was the policy of the legislature to encourage industry, by giving to the town the benefit of the pauper's labor, but if the town is allowed 70 cents for a man who can do nothing, and has no allowance for one who earns half a support, it is made the interest of the town to prevent paupers from doing any work. *St.* 1787, c. 54, § 4 ; 1788, c. 30, § 7 ; 1793, c. 59, § 1, 2, 6, 7, 13 ; *Paris* v. *Hiram*, 12 Mass. R. 267 ; *St.* 1828, c. 142 ; *Freeport* v *Edgecombe,* 1 Mass. R. 459 ; *Wilson* v. *Brooks,* 14 Pick

341 ; *St.* 1821, *c.* 20 ; 1822, *c.* 81 ; 1823, *c.* 21 ; 1830, *c.*   Common-
120, § 1, 2, 3 ; .1798, *c.* 64 ; *Wilson* v. *Church*, 1 Pick. 26.     wealth
*v.*
The town is obliged to credit the State, only for the sur-   Cambridge
plus of all the earnings and allowances, after supporting all its
State paupers in the same year ; and this has been the con-
struction given by the several committees on accounts.   They
are made a tribunal to audit claims against the government,
and their allowance of a claim is conclusive, like a judgment.
*Moody* v. *Thurston*, 1 Str. 481 ; *Brown* v. *Bullen*, Doug.
407 ; 2 Stark. Evid. (Metcalf's edit.) 363 ; *Wade* v. *Salem*,
7 Pick. 333.

The money was paid under a mistake of law, if under any
mistake, and cannot be recovered back.

*Austin*, Attorney General, for the Commonwealth, said that
in the rolls laid before the legislature, the defendants charge
the Commonwealth for the whole number of days during which
the paupers were in the almshouse, allowing nothing for their
earnings ; and that the overseers of the poor certify on these
accounts, that no part thereof was for the support of any male
person, &c. " while he was of competent health to labor."
According to the proper construction of the statutes, these
certificates were not true.   The documents referred to prove,
that the paupers were capable of performing, not trifling acts,
but hard labor, that they were employed to work on the high-
ways, and that some of them were let out to the town's peo-
ple at from 50 to 75 cents a day.   The question is not who
is a pauper, so as to be entitled to relief from the town, but
what sort of pauper is to be supported at the expense of the
Commonwealth ; and in this point of view, the definition of a
pauper, as one who is not able wholly to support himself, is
not correct.

The committees on accounts could not have known that
the certificates of the overseers were untrue, and consequent
ly their allowance of the accounts was founded on a mistake
of fact, and is not a bar to recovering back the money paid.
But even a mistake of law on the part of the committee,
would not bar the Commonwealth.

WILDE J. delivered the opinion of the Court.   This suit   *June 25th*
was instituted by the attorney general, under an order of the

House of Representatives, for the recovery of sundry sums of money from time to time paid by the Commonwealth to the town of Cambridge by mistake ; it being maintained by the attorney general, that some of the paupers, for whose support these payments were made, were not chargeable to the Commonwealth ; that larger sums of money have been paid for the support of other paupers, than the defendants were entitled to receive ; and that these payments were all made in consequence of certain certificates of the overseers of the defendant town, which have since been discovered to be untrue. On the other hand, the defendants maintain that all the accounts allowed by the committee of accounts, and paid by the Commonwealth, were justly due to them and rightly paid, and that the certificates of the overseers were in conformity with the facts certified and in pursuance of law.

In support of the defence, evidence was offered at the trial to prove that it was made known to the several committees of the legislature on accounts, in each of the years included in the plaintiff's claim in this action, that it was the practice in all the towns having State paupers, as well as others, to set them to work from time to time, as they were able, and occasion offered ; and that Cambridge did so, as well as other towns ; that no credit was given to the State by such towns for the labor of such paupers, it being well understood that the cost of supporting them was much greater than the sum allowed by the State ; and with the knowledge of these facts the defendants' accounts for the support of State paupers were allowed by the committees of the legislature. This evidence was objected to by the attorney general as inadmissible, and for the purpose of raising the questions of law arising on this evidence and the other evidence in the case, without the examination of the evidence offered, it was ruled to be incompetent.

The questions now at issue depend upon the construction of the several statutes in relation to paupers, and particularly on that of the statute of 1823, *c.* 21, and the statute of 1830, *c.* 120.

By the former of these statutes it is enacted, "that no male person over the age of twelve years and under the age

of sixty years, while of competent health to labor, shall be considered a State pauper and entitled to support as such." The meaning of the words " of competent health to labor," is not obvious, but may be ascertained, as we think, with sufficient certainty, by reference to other statutes *in pari materia*, and by the acts and proceedings of the legislature since the passage of the act. That a strict literal construction of the statute would be opposed to the intention of the legislature, and the true meaning of the act, appears to us manifest from various considerations.

In the first place, such a construction would exclude from the list of State paupers all male persons who may be able to perform any labor, however inconsiderable, and although they might not be able to support themselves, and might stand in the most urgent need of relief. Such a construction would greatly reduce the number of State paupers, for there are very few who are not able to perform some labor, but it would be manifestly inconsistent with the general object and design of the poor laws, which was to provide for the support of all indigent persons, who should be unable to support themselves.

In the second place, such a construction would be inconsistent with other statutes, which expressly authorize the overseers of the poor to employ State paupers as other paupers may be, and there is no reason to suppose that the statute of 1823, *c.* 21, was intended to repeal a provision so perfectly reasonable. By the statute of 1793, *c.* 59, § 13, it is enacted " that the overseers of the poor shall relieve and support all poor persons residing or found in their towns, having no lawful settlements within this Commonwealth, when they stand in need, and may employ them as other paupers may be."

By the statute of 1828, *c.* 142, § 2, it is provided that the overseers of the poor of any town in this Commonwealth shall have the same power and authority over persons who may be placed under their care, which overseers or masters of workhouses have over persons committed thereto, by force of an act entitled an act for erecting workhouses for the reception and employment of the idle and indigent; (*St.* 1788, *c.* 30;) which act extended to State paupers, as well as other paupers. And by that act it was made the duty of the overseers to

<div style="text-align: right">Common wealth<br>*v.*<br>Cambridge</div>

keep a fair account of the charge of supporting such State paupers, and to exhibit the same once in every year, at the least, to the General Court, for allowance and payment, deducting therefrom the amount of such paupers' earnings.

By these provisions it appears clearly, that State paupers might be employed, if of ability to labor, and that notwithstanding such ability they were entitled to relief if they were not able to support themselves. And in the case of *Wilson* v. *Church, et al.* 1 Pick. 26, it was laid down as an undoubted principle, that a town had a right to the services of a State pauper to aid in his support.

Thirdly, a different construction, as it is believed, has been adopted by the legislature. It was offered to be proved at the trial, that the claims of towns for the support of paupers of ability to do some labor, but not of sufficient ability to support themselves, have been uniformly allowed by the committees on accounts. Such allowances, when confirmed by the legislature, seem to be equivalent to a declaratory act. It does not appear that the House of Representatives had in contemplation any new construction of the statute, when they directed the attorney general to institute the present action. By the report of their committee it appears, that the ground on which it was supposed the action might be maintained is entirely consistent with the construction of the statute contended for by the defendants' counsel. The report states that many persons, charged as paupers by the defendants, were able to support themselves, and did much more than support themselves by their labor, and on that ground the committee "respectfully submitted that it was expedient to institute the present suit."

Upon the whole, therefore, we are of opinion that a literal construction of the statute cannot be adopted, and that the only reasonable construction is that for which the defendants' counsel contend. We think the intention of the statute was to prohibit the support of paupers at the public expense, who were of competent health and capacity to support themselves by their labor. If any ability to labor short of this were sufficient to exclude a pauper from relief and support at the public expense, many paupers standing in need of relief would undoubtedly be left unprovided for ; which cannot be supposed to have been intended by the legislature.

.The next question is whether, by law, towns were entitled to the earnings of paupers without being liable to account therefor with the State.   Such was the law, undoubtedly, previous to the statute of 1830, *c.* 120.   Before that statute no such account was expressly or impliedly required.

By the statute of 1788, *c.* 30, § 11, the overseers of the poor were required to keep a fair account of the charge of supporting all State paupers committed to workhouses from time to time, and to exhibit the same once in every year at the least, to the General Court, for allowance and payment, deducting therefrom the amount of such paupers' earnings.

By the statute of 1828, *c.* 142, § 2, before cited, overseers of the poor, in all cases, were to have the same power and authority over paupers as the masters of workhouses had over persons committed thereto, but they were not required to keep an account of their labor.   From these and other statutes it appears evidently, that the towns were entitled to the services of all paupers to aid in their support, and that the amount allowed by the State was an additional allowance which was supposed to be no more than sufficient to indemnify the towns.

It was, however, probably found that the allowances by the State were generally more than sufficient to indemnify the several towns, and they were accordingly from time to time reduced.   And by the statute of 1830, *c.* 120, a further provision was made, for the purpose, no doubt, of preventing any town from receiving from the State more than sufficient, in addition to the earnings of the paupers, to indemnify them for expenses incurred.   By the first section it is enacted, that " all claims against the Commonwealth, presented for allowance by any city, town, district, or keeper of any house of correction, for the support of State paupers, shall be so made as to include all claims for such charges up to the first day of January annually ; and the selectmen, overseers of the poor, or keeper of any house of correction, shall certify that the whole amount charged in the annexed account has been expended for the support of the persons borne on said list, for the time therein specified."

By this statute no town was entitled to receive from the State more than the amount of the sums by them expended

after deducting the earnings of the paupers, although they might not be entitled to so much ; so that if the amount of the earnings, together with the stated allowance by the Commonwealth, should fall short of the expenses, the town would not be fully indemnified. The statute will admit of no construction which would avoid this consequence, although the object of the statute was not to deprive any town of a full indemnity. The certificate of the overseers, therefore, must be understood as referring to the charges in the account and the expenses collectively, and not distributively. //The earnings of the paupers may be very unequal, but if the earnings of all, together with the stated allowance, do not exceed the expenses, the town is clearly entitled to the whole. //All that the statute requires is, that the whole amount charged should have been expended for the support of the paupers. But if it can be shown, that the defendants have received for any year more than their expenses, the plaintiffs will have a right to be reimbursed, although the defendants may be able to prove that in other years they have received less than their expenses. The surplus received one year cannot be transferred to the account of another, to make up for a deficiency. For although such a transfer might be equitable, it clearly is not allowable by any construction that can be given to the statute.

Another question has been argued by counsel, which, from the view we have taken of the case, we do not think it necessary to decide. It was objected by the defendants' counsel, that the plaintiff cannot recover for money paid by reason of any mistake of law. There is certainly no reason to suppose that there has been any mistake of the law on the part of the committee on accounts. The construction they gave to the statute of 1823, *c.* 21, is the same that is now adopted. And as to the question relating to the statute of 1830, *c.* 120, that cannot involve any mistake of law. To entitle the plaintiff to recover for any surplus payment for the support of paupers, it must be proved that the defendants have received therefor more than they have expended ; and if it should be so proved, it will falsify the certificate or certificates of the overseers of the poor of the defendant town, and will show a mistake of fact. It seems, therefore, that no question can arise in this

case as to the effect of a mistake of the law, and as to that question we give no opinion.

As to the evidence offered by the defendants, we think it clearly admissible ; the verdict therefore is to be set aside and a new trial granted.